STATE OF NORTH CAROLINA v. DONALD MILTON LAWRANCE, III

884SC920

(Filed 20 June 1989)

**Homicide § 30.3 — suffocation of infant — instruction on involuntary manslaughter not required**

The trial court did not err in failing to instruct the jury on involuntary manslaughter where the evidence tended to show that defendant intended to press the face of his seven-month-old son into his crib mattress, and this intentional act caused the child's death by suffocation; but an instruction is not required, regardless of whether the actual killing was intentional or unintentional, when the intentional act leading to death was naturally dangerous to human life.

APPEAL by defendant from *Strickland, James R., Judge.* Judgment entered 13 February 1988 in ONSLOW County Superior Court. Heard in the Court of Appeals 8 May 1989.

Defendant was convicted of second-degree murder and sentenced to a term of forty-five years' imprisonment. The State's evidence tended to show that defendant's seven-month-old son died in his crib from suffocation. The pathologist who performed the autopsy testified that he found bruises on either side of the infant's face, on the mid part of his back, and a reddish area over the bridge·of his nose. He also found healed fractures of five ribs and a collarbone, congestion of the brain, and fluid in the lungs. These findings were consistent with battered child syndrome.

Detective James O'Malley of the Onslow County Sheriff's Department testified that defendant waived his rights and admitted during questioning at the Sheriff's Department that evening that he had put the infant's head into his crib mattress in order to stop his crying and held it until he stopped moving. Defendant made a written statement on 8 September 1987 wherein he admitted the following:

I grabbed Donnie's face and squeezed his cheeks in anger to get him to stop crying. He did not. I picked him up and shook him three or four times to make him stop. He still did not stop crying. I put him on his stomach and pressed his head into the mattress. He stopped crying some moments later. I turned his head to the side and turned the radio on and walked out. I can only say I'm sorry. If I could go back and do it again he would still be here today.

Defendant denied at trial that he had shaken the infant or pushed his head into the crib mattress. He explained that he made the written statement because Detective O'Malley had threatened him with incarcerating his wife.

*Attorney General Lacy H. Thornburg, by Senior Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Staples Hughes, for defendant-appellant.*

WELLS, Judge.

Defendant contends that the trial court erred in failing to instruct the jury on involuntary manslaughter. The jury received instructions on first and second-degree murder. The trial court must instruct the jury on all substantial and essential issues of the case arising on the evidence presented at trial. *State v. Harris,* 306 N.C. 724, 295 S.E. 2d 391 (1982). When it is possible under the indictment to convict the defendant of a lesser included offense and the evidence supports the lesser charge, the defendant is entitled to receive instructions on the lesser offense as well as the more serious one. *State v. DeGraffenreid,* 223 N.C. 461, 27 S.E. 2d 130 (1943).

Involuntary manslaughter is a lesser included offense of second-degree murder. *State v. Greene,* 314 N.C. 649, 336 S.E. 2d 87 (1985). Second-degree murder is defined as "the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129 (1971). Voluntary manslaughter consists of "the unlawful killing of a human being without malice and without premeditation and deliberation." *Id.* Involuntary manslaughter is "the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *Greene, supra.*

STATE v. LAWRANCE

[94 N.C. App. 380 (1989)]

Defendant testified at trial that at approximately 9:00 a.m. on 8 September 1987 he used an eyedropper to administer medicine to his son, and had to hold the infant's cheeks to ensure that he swallowed it. He then placed the infant in his crib on his stomach and left the room. He left home at approximately 11:15 a.m. He further testified that his wife telephoned him at work shortly after 1:15 p.m. to tell him that something was wrong with their son. When he arrived home paramedics informed him that the child was dead.

We hold that the trial court correctly determined that the evidence presented at trial did not support an involuntary manslaughter instruction. Although defendant might not have intended to actually kill his son, the evidence certainly tended to show that he intended to press the child's face into the mattress. This intentional act caused the child's death by suffocation. The presence of an intentional act in the chain of causation leading to death does not automatically render a killing intentional, State v. Wilkerson, 295 N.C. 559, 247 S.E. 2d 905 (1978), so as to preclude an involuntary manslaughter instruction. The instruction is not required, however, regardless of whether the actual killing was intentional or unintentional, when the intentional act leading to death was naturally dangerous to human life. We note that the alternative ground for establishing involuntary manslaughter, a killing proximately caused by a culpably negligent act or omission, is not supported by the evidence in this case.

Defendant did not request an instruction on voluntary manslaughter at trial, nor does he assert on appeal that such instruction should have been given. Because the trial court correctly determined that the evidence did not support an instruction on involuntary manslaughter, we overrule defendant's assignment of error.

No error.

Chief Judge HEDRICK and Judge ARNOLD concur.